Walter RUSSELL, Petitioner,

v.

Donald W. WYRICK, Warden,[1] Missouri
State Penitentiary, Jefferson City,
Missouri, Respondent.

Civ. A. No. 73CV401–W–3–R.

United States District Court,
W. D. Missouri, W. D.

July 20, 1974.

1. Because of judicially noticeable succession in office, Donald W. Wyrick, present Warden of the Missouri State Penitentiary at Jefferson City, Missouri, is substituted as the respondent in this action in his official capacity. *See,* Caffey v. Wyrick, 377 F.Supp. 160 (W.D.Mo.1974).

Walter Russell, pro se.

Neil MacFarlane, Asst. Atty. Gen. of Mo., Jefferson City, Mo., for respondent.

FINAL JUDGMENT DISMISSING PETITION FOR A WRIT OF HABEAS CORPUS WITH RESPECT TO THOSE UNEXHAUSTED CONTENTIONS SET FORTH AS GROUNDS A(1) and A(2), AND DENYING PETITION FOR A WRIT OF HABEAS CORPUS WITH RESPECT TO ALL REMAINING GROUNDS AND CONTENTIONS

WILLIAM H. BECKER, Chief Judge.

This is a petition[2] for a writ of habeas corpus by a state prisoner in custody at the Missouri State Penitentiary at Jefferson City, Missouri. Petitioner seeks an adjudication that his conviction and sentence were illegally imposed upon him in violation of his federal constitutional rights. Petitioner requests leave to proceed in *forma pauperis*. Leave to proceed in *forma pauperis* has been granted by prior order of this Court on November 1, 1973.

Petitioner states that he was convicted upon his plea of guilty in the Circuit Court of Cooper County, Missouri, of forcible rape; that he was sentenced on that conviction on September 14, 1959, to a term of life imprisonment; that he did not appeal from the judgment of conviction and imposition of sentence; and that he was represented by counsel at all critical stages of the proceedings against him, but he does not state whether he was assisted in the preparation and filing of the various postconviction motions and petitions.

Although petitioner briefly states his purported limited involvement in postconviction litigation, the records of this Court and the thorough investigation by counsel for respondent, as indicated by

2. The present petition for a writ of federal habeas corpus is the fifth federal habeas corpus petition filed by the petitioner in this Court and assigned to the undersigned District Judge.

respondent's response to the order to show cause, indicates that petitioner has been extensively involved in state and federal postconviction litigation. A chronological review of petitioner's involvement in state and federal postconviction legal proceedings reveals the following history.

In 1962, petitioner instituted a habeas corpus proceeding in the Circuit Court of Cole County, Missouri. After the holding of an evidentiary hearing, the petition was denied. In that same year, petitioner filed a motion under Missouri Criminal Rule 27.26, V.A.M.R., in the Circuit Court of Cooper County, Missouri, the motion was subsequently withdrawn by the petitioner on March 8, 1962.

On September 13, 1962, and August 25, 1964, petitioner filed petitions for state habeas corpus relief in the Missouri Supreme Court. Those petitions for habeas corpus relief were denied by the Missouri Supreme Court without opinions.

Subsequently, petitioner filed a petition for a writ of federal habeas corpus in this Court. That petition was dismissed without prejudice on January 24, 1966 for failure to exhaust state remedies. Russell v. Swenson, 251 F.Supp. 196 (W.D.Mo.1966).

On April 26, 1966, petitioner filed a motion to withdraw his guilty plea and to vacate sentence and judgment under Missouri Criminal Rules 27.25 and 27.26 in the Circuit Court of Cooper County, Missouri. The Circuit Court denied the motion. Petitioner appealed the denial to the Missouri Supreme Court and, on June 15, 1967, the Missouri Supreme Court remanded the case to the Circuit Court for the holding of an evidentiary hearing. Thereafter, on August 21, 1967, petitioner filed another motion to vacate judgment and sentence under Rule 27.26 in the Circuit Court of Cooper County, Missouri. An evidentiary hearing was held, and on October 11, 1967, petitioner's motion was denied.

Petitioner appealed that denial of his motion to the Missouri Supreme Court, which affirmed the denial on November 10, 1969, in Russell v. State of Missouri, 446 S.W.2d 782 (Mo.Sup.1969).

Thereafter, petitioner filed another petition for a writ of federal habeas corpus in this Court, which was dismissed without prejudice at the request of the petitioner. Russell v. Swenson, Civil Action No. 18022–3 (W.D.Mo. February 9, 1970). Shortly thereafter, petitioner filed another petition for a writ of federal habeas corpus in this Court, which was dismissed without prejudice for failure to exhaust available and adequate state remedies, in an opinion dated February 16, 1970. Russell v. Swenson, Civil Action No. 18119–3 (W.D.Mo. February 16, 1970).

Thereafter, petitioner filed still another petition for a writ of federal habeas corpus in this Court, which was also dismissed without prejudice for failure to exhaust adequate and available state court remedies, in an opinion dated February 26, 1970. Russell v. Swenson, Civil Action No. 18126–3 (W.D.Mo. February 26, 1970).

On January 12, 1971, petitioner filed his fourth motion under Missouri Criminal Rule 27.26 in the Circuit Court of Cooper County, Missouri. On February 8, 1971, counsel was appointed to represent the petitioner, and on February 10, 1971, an amendment was filed to petitioner's motion to vacate judgment and sentence under Rule 27.26. On July 1, 1971, the Circuit Court held an evidentiary hearing, throughout which petitioner and his appointed counsel were present. On July 21, 1971, the Circuit Court entered its findings of fact and conclusions of law and overruled petitioner's motion. Petitioner appealed that decision of the Circuit Court to the Missouri Supreme Court, which affirmed the Circuit Court's decision on May 14, 1973, in Russell v. State of Missouri, 494 S.W.2d 30 (Mo.Sup.1973). The present petition for a writ of habeas corpus followed.

Petitioner states the following grounds upon which he bases his contention that his conviction and sentence were illegally imposed in violation of his federal constitutional rights:

"A. The Missouri Supreme Court erred in denying the appellant's allegation that he was a juvenile ward of the State of Missouri at the time of the alleged crime and that he should have been treated as such. A denial of the above was a violation of his constitutional rights (14th Amendment).

"B. The Missouri Supreme Court erred in denying the appellant's allegation that the trial court who received his plea of guilty violated his United States Constitutional Rights under the 14th Amendment when appellant entered his plea of guilty in that it was not made voluntarily and with an understanding of the nature of the charge.

"C. The Missouri Supreme Court erred in ruling that appellant's Constitutional Rights under the 14th Amendment were not violated when the trial judge did not have appellant sua sponte mentally examined before accepting a plea of guilty on a capital offense, even though the circumstances indicated such was needed.

"D. The Missouri Supreme Court erred in ruling that appellant's Constitutional Rights (under the Sixth and Fourteenth amendments) were not violated as:

1. Court appointed counsel failed to request a mental examination of Appellant either before or at the time of appellant's plea.

2. Court appointed counsel had such a conflict of interest that appellant was deprived of his constitutionally guaranteed right of counsel.

"E. The Missouri Supreme Court erred in ruling that appellant's Constitutional Rights were not violated by the trial court at his 27.26 Evidentiary Hearing (which was fundamentally unfair) in that:

1. The trial court did not protect or afford appellant due process and equal protection under the law.

2. Appellant's court appointed counsel did not afford his client effective assistance of counsel at a critical stage of the hearing."

Petitioner states the following as facts in support of his contention that he is being held in custody unlawfully:

"A. The trial court ruled in its finding of facts and conclusions of law that (and the Missouri Supreme Court affirmed same) . . . . 'the movant was not a juvenile within the meaning of Chapter 211, R.S.Mo.1949, on July 12, 1958, and was not entitled to be treated as a juvenile and afforded rights under that chapter . . . . that movant came under Section 219.020 R.S.Mo. through requests of the court to the Board of Training Schools.'

"The point now at issue is: that appellant was not afforded his rights under whatever section of Missouri law that was applied to his case.

"The facts of this case show that the appellant was committed to the State Board of Training School for Boys from the Juvenile Court in St. Louis, Missouri, on May 10, 1958 (MT. 2, p. 157).

"It is interesting to note that SECTION 219.020 (STATE BOARD OF TRAINING SCHOOLS DUTIES . . . POWERS) states:

There is hereby created and established a State Board of Training School which have charge and control of all training schools and industrial homes for boys and girls of this state, specifically: The Training School for Girls; and The Training School of Negro Girls, together with all institutions for correctional training of *juveniles* which may hereafter be created in this state, which schools are hereby classified as educational institutions and recognized to have as their purpose the special correctional training, the education and the moral rehabilitation and *guidance of juvenile offenders which any court*

*of proper jurisdiction may assign to such institutions. The Board shall provide for the rehabilitation of all juveniles committed by law to its charge or to any institution under its control.* (Emphasis mine)

"In Section 219.110, dealing with the Superintendent of each school, it states in part:

'. . . each Superintendent shall be chief administrative officer of his or her respective institution and shall assume executive control of such institution, its inmates and activities, *under direction of the Board and Director of Training Schools.'*

"The appellant's situation boils down to this:

"Russell was arrested in the State Board of Training School for Boys in Boonville, Missouri. He was arrested when he was called to the Superintendent's office where he testifies (sic) that he was physically abused (MT 1, p. 94–95). The Superintendent then released Russell to the local police who took him to jail the same day (MT 1, p. 116).

"It is quite clear that Russell was released and handed over to the local police by the Superintendent of the Training School for boys, which is in violation of Section 219.200 concerning the *juveniles* of the Boys Training School. In order for Russell to be legally released to the local police, the decision would have to come from the *Board* of the Training School. Under Section 219.110, the Superintendent is in control of the Training School, but he is under direction of the *Board* in matters of constitutional proportions.

"In Russel's (sic) case, the *Board* did not release him to the local police and there is nothing in the entire Chapter (219) dealing with the Boys State Training School, which indicates that the Superintendent has the authority to release a *juvenile* to the local police for abuse and prosecution. (MT 1, p. 103.)

"Also, see Section 219.200, which states:

## NO CHILD TO BE DETAINED IN JAIL OR LOCK–UP

'No child committed to the Board of Training schools and awaiting transfer to the custody of the Board shall be detained in any police station, prison, jail, or lockup, or be transferred or detained in association with criminals or vicious and dissolate persons.'

"Russell was placed in jail in Cooper County (MT 1, p. 34) and he was threatened by other prisoners. He later was moved to Marshall, Missouri where he was threatened by the Sheriff (MT 1, p. 80–81). All of the aforementioned was unconstitutional because Russell was under indeterminate sentence and it was the State Training School's Board's duty was (sic) to make certain that the appellant's welfare and constitutional rights were not infringed upon . . . Alone, a boy, 17½ years old facing hostile circumstances wherein the state authorities have called in local citizens to witness that the accused was not being misused . . . that act was to protect the state's rights, not the rights of the appellant. The only way appellant's rights could have been protected was to afford him the necessary counsel he needed when they took him to the Superintendent's office for custodial interrogation. That is where the violation of the appellant's constitutional rights started when he was surrounded by law enforcement personnel for interrogation . . . interrogation about an alleged raping of a white woman by a black boy. And all of this was done with no one at Russell's side to counsel him. He stood by himself and relied on the total mental I.Q. factor of 67 to protect his constitutional rights.

"The Missouri Supreme Court's case of two years ago, wherein the ruling concerning the juveniles with the indeterminate sentences at Boonville being illegally contained in the Missouri State Penitentiary, would indicate that until these juvenile wards of the state become twenty-one, the State must take every measure to protect their constitutional

rights and not mishandle their substantive rights as was perpetrated in the appellant's case.

"In view of the above, appellant believes the trial court was completely erroneous in determining that he was not a juvenile,—but, for the record, let it be noted that throughout the entire 219 Section dealing with the State Board of Training Schools, the wards to the State are referred to as JUVENILES. . . . If they are referred to as JUVENILES IN the 219 Section, and in the 211 Section they are not JUVENILES, it seems that we have two different statutes running side by side, but they are in definite conflict. . . .

"For this point, alone, appellant's view is that the Habeas Corpus should be granted. . . .

"B. The Missouri Supreme Court Rule 25.04 provides in pertinent part, 'The Court . . . *shall not* accept a guilty plea without first determining that the plea is made voluntarily with an unstanding of the nature of the charge." (Emphasis added).

As stated in State v. Parker, 413 S.W.2d 489 (Mo.Sup.1967 at 493):

A plea of guilty in open court is a solemn confession of guilt but, like a confession out of court should be received with caution. The plea should not be accepted by the court unless it is voluntarily and understandingly made.

"These determinations are made by the judge *at the time of the plea—when the plea is entered.* State v. Smith, 421 S.W.2d 501, 504 Mo.Sup. 1967. It is irrelevant that the defendant has counsel. State v. Arnold, 419 S.W.2d 59, 62 (Mo. Sup.1967). It is the duty of the court before accepting a guilty plea to thoroughly investigate the circumstances under which it is made. State v. Blaylock, 394 S.W.2d 364 (Mo.Sup.1965), State v. Mountjoy, 420 S.W.2d 316 (Mo.Sup. 1967).

"In Appellant's case, the transcript of the guilty plea proceedings (Mt. 1, p. 1 thru 8) reflects the appellant was not advised of the nature and cause of the accusation. That he was not advised of the consequences of a plea of guilty. He was not advised that as a result of a plea of guilty he would waive certain rights, privileges and immunities. The record reflects that he was informed that he could have a jury trial, but it should be bore (sic) in mind that the appellant was a 17½ year old black boy with low mentality. Being academically retarded and never having been convicted of a felony before, being told that he could have a jury trial meant nothing to him unless it was thoroughly explained that he had a right, upon conviction, to have the jury assess punishment; that following conviction by a Jury he had the right to appeal said conviction and sentence to the Missouri Supreme Court and that if he was unable to pay the cost of the appeal, he could proceed in forma pauperis; that the State of Missouri would be required to prove his guilt beyond a reasonable doubt, and that he would be presumed innocent until and unless such proof was made to the satisfaction of the jury; that he had a right to confront any and all witnesses against him; and that he could not be compelled to testify against himself.

"Further, the record proves that the Court did not inquire as to whether the plea was freely made without the inducement of promises, (Deopke v. State of Missouri, No. 55,982, April 12, 1970), and the transcript does not reveal that the court ever advised movant that it was not bound by the recommendations of the prosecutor or movant's attorney. State v. Roach, 447 S.W.2d 553, 556 ([Mo.] 1969) and the record does not reflect that the appellant himself pleaded guilty. That is, stated himself that he was pleading guilty. See MT 1, p. 3 and compare MT 2, p. 87).

"It appears therefore that the plea of guilty entered in the case at bar fails to comply with the requirements of the

Mandatory Missouri Supreme Court Rule 25.04 and the federal court cases interpreting it.

"C. Appellant contends that the trial court erred (and the Missouri Court affirmed same) when the presiding judge, with appellant's psychological record, a reported confession and the conclusionary alleged facts of a capital offense of forcible rape at his disposal, did not properly resolve appellant's mental competency before accepting a plea of guilty; all of which was fundamentally unfair to the appellant and violated his federal constitutional rights under the Fourteenth Amendment.

"A review of the guilty plea proceedings reflects that the sentencing judge had a report by Walter S. DeClue, Clinical Psychologist at the State Board of Training School for Boys, concerning the results of the California Test of Mental Maturity which was administered to the appellant on May 12, 1958, approximately sixteen (16) months and two days prior to the day of sentencing. (MT 1, p. 9-10). The report itself classifies the appellant as academically retarded, functioning within the borderline range, with a total mental factor I.Q. of 67. Along with the reports of the test is a note (MT 1, p. 9) stating:

NOTE: While all boys are given group tests of intelligence shortly after they are admitted, only boys who have committed crimes against persons such as rape, assault, armed robbery, and any type of sexual offense, as well, as any unusual or abberant behavor (sic) are checked with the Roschach and referred to the Psychiatrist. Boys who score within the defective range on the admission tests are rechecked with individual tests of intelligence. Since this boy is not mentally defective,

nor was alleged to have committed any of the offenses listed above, he was not referred for any further study.
Walter S. DeClue
Clinical Psychologist

"It is clear that Mr. DeClue was giving the court a message: any boy charged with Rape, etc., needs a psychiatric examination. When the court read that report on Russell, he was standing before the bar charged with the crime of forcible rape, and it had already been established that he was of low mentality. Consequently, a psychiatric evaluation was in order as,

'the conviction of an accused person while he is legally incompetent violates due process, Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956), and that State procedures must be adequate to protect this right.' ([Pate v. Robinson] 383 U.S. [375] at 378, 86 S.Ct. [836] at 838 [15 L.Ed. 2d 815]).

The aforementioned test was administered to the appellant sixteen months and two days earlier, but the court made no attempt before accepting his plea of guilty, to determine from professional psychiatrist whether or not this academically retarded boy was mentally capable of entering a plea of guilty to a capital offense.

"If a substantial question arises as to the mental capacity of the accused to proceed, or to put it another way, if a 'bona fide' doubt as to appellant's competence to stand trial arizes, (sic) the Judge, on his own motion must have defendant examined or a hearing thereon of his mental capability.

"This duty arises whether requested or not—cannot be waived by defense counsel. See Brizendine v. Swenson, [D. C.] 302 Fed.Supp. 1011. Pate v. Robinson, 383 U.S. 375 [86 S.Ct. 836, 15 L. Ed.2d 815], requires that the trial judge, on his own motion should order hearing or examination when a bona fide doubt arises . . . In Coppedge v. U. S., 369 U.S. 438 [82 S.Ct. 917, 8 L.Ed.2d 21],

'where substantial question arose as to mental capacity, appointment of Gov. psychiatrist was required.'

"In Durham v. United States, No. 11859, July 1, 1954, Criminal Law 311, 331: 'When lack of mental capacity is raised as a defense to a charge or crime, the law presumes that the defendant is sane, but as soon as some evidence of mental disorder is introduced, sanity must be proved beyond a reasonable doubt as part of prosecution's case.' D. C.Code 1951: 24–301.

"In the case at bar, one of the attorneys for the appellant, Mr. Harlan stated at the sentencing, '. . . we have gone into his background as much as we are able and have this report of the Psychologist that I think would be interesting for *the court to read.*' (MT 1, p. 5) Again on page 7 (MT 1), Mr. Tisdale, another of the appellant's counselors states: 'We urge the court to take those facts into consideration: his background and the *fact he is of low mentality.*'

"The aforementioned statement's (sic) by counsel to the judge prior to sentencing, plus the psychologist report of low mentality produced probable cause and it was the duty of the trial court to have appellant mentally examined before passing sentence.

"In Green v. United States, 128 U.S. App.D.C. 498m (sic) 379 F.wd. (sic) 949, 954, 955 (1967), the United States Court of Appeals for the District of Columbia Circuit said: ' . . . Pate simply has given constitutional proportions to the denial of a judicial competency hearing not only when specifically requested or when a certification of competency is challenged, but now also when the particular facts of a given case would make it an abuse of the trial Judge's discretion not to hold such further investigation by the court into the accused's mental capacity.'

"Needless to say appellant invokes the foregoing decision. . . .

"D(1) The Missouri Supreme Court erred in ruling that appellant's Constitutional rights (under the Sixth and Four-teenth) Amendments were not violated as Court Appointed counsel failed to request a mental examination of Appellant either before or at the time of his plea.

"Under all of the circumstances of this case, it is almost axiomatic that appellant was denied the effective assistance of counsel guaranteed by the sixth and fourteenth amendments of the Constitution of the United States.

"The record reveals that one of the appellant's counselors, Lane Harlan contacted Walter DeClue, Clinical psychologist at the State Board of Training School for Boys concerning the appellant's mental capabilities (MT 2, p. 136). One of the other counselors, H. Tisdale, admits that they had the psychologists (sic) report available before the appellant went to trial (MT 1, p. 162), and during the sentencing of appellant, Mr. Tisdale states: (MT 1, p. 4–5) 'We do have a psychiatrists (sic) report that I think might be well for the court to see.'

"The note accompanying the psychologist report on the mental factors of the appellant was available to the counselors and its contents indicates whenever a boy is charged with a crime such as Rape, he should be referred to the psychiatrist.

"There is no doubt that the appellant, with his low mentality and being charged with the serious capital offense of rape, should have been examined by qualified psychiatrist to see if he had a deteriorating condition. It is not probable that an examination at the time of his plea would reveal he was not mentally responsible for his action. At least, such an examination should have been had to determine that important question.

"In Re Saunders, [2 Cal.3d 1033, 88 Cal.Rptr. 633] 472 p.2d 921 (Cal.1970) defense counsel was given information relative to defendant's mental condition but concluded to withhold the issue for tactical reasons. The court said, 'in short . . . counsel made the decision . . . without the benefit of medical opinion in the matter and with full knowledge that medical reports were in existence'. Held, the petitioner was

denied effective assistance of counsel . . .

"In the case at bar, the psychologist report dictated that the appellant needed to be mentally examined by qualified psychiatrist, and when counsel read the report and studied the accompanying note, it was counsel's duty to act . . . request a psychiatric evaluation to protect the appellant's rights. The motion that a defendant's federally guaranteed constitutional rights can be waived by his lawyer's satisfaction was laid to rest over thirty years ago in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 146 (1938). That principle was reiterated in Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

"In view of the circumstances of Appellant's case, it was the counselors (sic) duty to request a mental examination of Russell shortly after they were appointed to represent him. Certainly, after being his lawyer a few days, and advising him that a jury trial would not be beneficial to him, and, when it was apparent that a plea of guilty would be entered, it was their duty to their client to have him mentally examined before permitting him to plead guilty to a capital offense. Their personal opinion as to how his actions seemed to them does not have anything to do with the mental compentency (sic) of the appellant . . . It takes a qualified psychiatrist to judge whether or not an individual is mentally capable to stand trial. . . .

"Under the facts presented and the authorities cited, this appellant states that he did not receive the effective assistance of counsel as guaranteed him by the Sixth and Fourteenth Amendment of the United States Constitution.

"D(2) Court appointed Counsel had such a conflict of interest that appellant was deprived of his constitutionally guaranteed right of counsel. . . .

"As the record will indicate, the appellant was represented by Attorney Hampton Tisdale (Court appointed) of Boonville, Missouri, when he was sentenced to life in prison on September 14, 1959, in the Cooper County Circuit Court. (MT 1, p. 152).

"The record will also disclose that during the time which and when Attorney Hampton Tisdale was representing this appellant, Attorney Tisdale was also a publicized member of a Special Committee called by the Chamber of Commerce of Boonville, to urge increased security measures at the State Board and Training School for Boys, where this appellant was a juvenile ward of the State (SEE APPELLANT'S EXHIBIT NO. 5).

"Appellant contends that his defense counsel, Mr. Hampton Tisdale, by virtue of being a citizen of Boonville, and the crime of which he was charged with was against a citizen of Boonville—that his duties with the Chamber of Commerce Special Committee which was spearheading action against the State Board of Training School, had such a conflict of interest that the appellant was deprived of his constitutionally guaranteed right of counsel.

"The question in this case at bar is thus narrowed to whether an attorney, who represents a defendant from the State Board of Training School for Boys, accused of a crime of Rape, and who, without knowledge and consent of the appellant, is at the same time an important member of a publicized Special Civic Committee which is dictated to by the aroused citizens of Boonville and is pressed into immediate action to secure protective measures from the juvenile wards of the State Board of training (sic) School for Boys, has by reason of these circumstances such conflicting interests to result in the denial of the constitutionally guaranteed right of counsel . . . to the appellant. . . . Appellant believes for the reason set forth and in view of the federal decisions pertaining to what constitutes a conflict of interest and the effect of such conflict on the federally guaranteed right of counsel, that the habeas corpus should be issued in his case. . . .

"(E)(1) The Missouri Court erred in ruling that appellant's Constitutional Rights were not violated by the trial court at his 27.26 Evidentiary Hearing (WHICH WAS FUNDAMENTALLY UNFAIR) in that:

"The trial court did not protect or afford appellant due process and equal protection under the law. During the course of his evidentiary hearing on July 1, 1971, in the Cooper County Circuit Court in Boonville, Missouri, (MT 2, p. 62–165) appellant limped into the courtroom, and with frightful misgivings testified, heard testimony and observed the proceedings with his hands and legs in chains and handcuffs for the entire evidentiary hearing (MT 2, P. 82, 125, 126).

"The undisputed facts indicate that the unnecessary shackling of the appellant was calculated to shackle and shatter the mind of a young man with a total factor I.Q. of 67 (MT 1, p. 10) and needless to say that such mental torture brought about the tragically unjust sacrifices of appellant's substantive fundamental rights as he was mistakenly advised to waive certain constitutional allegations which were before the court for a hearing.

"The appellant's original motion before the court emphatically stated under questions 8(a) and 9(a) (MT 2, p. 2) that appellant 'was illegally searched, seized and arrested.' The same allegations were reiterated in DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION TO STRIKE (MT 2, p. 56) and appellant had been thoroughly briefed by his inmate counselor that the allegations were being presented because of a Federal Judge's decision that no ruling had been rendered by the Missouri Supreme Court on these points, therefore appellant had not exhausted his state remedies. (The decision was rendered By (sic) Federal Judge Becker) Also, a major issue in the appellant's present petition concerns the appellant's mental capacity (MT 1, p. 10–11) and his ability to understand what transpired when he entered a plea of guilty and his ability to understand now what is taking place concerning his legal rights. The record reveals that he has low mentality, and it was fundamentally unfair for the trial court to take advantage of his submarginal intelligence to justify the means of the state. Without a doubt, the appellant did not understand what he was doing when he sat shackled in the courtroom during the evidentiary hearing and permitted and agreed to waive the aforesaid important allegations (MT 2, p. 77), plus the waiving of the right to challenge the ineffective assistance of counsel (MT 2, p. 78) and the waiver of counsel at preliminary hearing (MT 2, p. 79).

"Appellant's entire motion was based on the fact that he was illegally seized, searched and arrested and that such seizure and arrest was done without the official filing of an original complaint or affidavit (See testimony of Tom Woolsey, MT, 1, p. 216–217) and the testimony of the former prosecuting attorney, John J. Stegner (MT 1, p. 187–188–189) reflects the doubt as to whether or not the prosecutrix filed an original complaint. There certainly is no record of one being filed. . . .

"All of these facts were presented in the original petition and appellant was informed that the petition was to be ruled upon as presented, but, with his limited intelligence and the unnecessary chaining of his hands and feet, he and his attorney suddenly decided to abandon the constitutional allegations as set forth in this point, and in doing so, they fell heir to an ingenious entrapment.

"The appellant's request to the court to have one of his hands freed so he could handle his papers (MT 2, p. 125) was denied by the trial judge, (MT 2, p. 126) and when the court denied that civil and humane request,—it was an abdication of its duty to protect the fundamental rights of the appellant. . . .

"E. (2) Counsel did not afford his client effective assistance of counsel

at a critical stage of the evidentiary hearing. . . .

"Effective assistance of counsel is a constitutional right guaranteed criminal defendants by the Sixth Amendment of the Constitution of the United States made enforceable upon the States by the 14th Amendment as a necessary prequisite (sic) of due process of law. Gideon v. Wainwright, 372 u.S. (sic) 335 [83 S.Ct. 792, 9 L.Ed.2d 799] (1963).

"The extension of effective assistance of counseling to indigent appellants was effectively settled when the California Supreme Court ruled on People v. Feggans, 67 Cal.2nd 44 [444, 62 Cal.Rptr. 419, 432 P.2d 21] in which they outlined what an appellate counsel was supposed to do in order to afford appellants effective aid,—for, what good is the right to have counsel on appeal if the appointed counsel is ineffective? The same court again handed down resounding opinions In Re: Smith 2 Cal.3rd 850 [508, 86 Cal.Rptr. 4, 467 P.2d 836] and In Re: Greenfield 11 Cal.App.34d [3d] 536 [89 Cal.Rptr. 847] in which they excoriated appellate lawyers who do less than adequate jobs on appeal, citing the outrageous dereliction of duties which had in Greenfield's case permitted him to go to prison for a crime he was not guilty of and compounded the outrage on appeal by being so ineffective as to allow such a conviction to be affirmed.

"In the case at bar, Attorney W. F. Daniel, attorney for the appellant did not familirize (sic) himself with appellant's original motion and the allegations therein, as his statements) MT 2, p. 75, 76, 80, 81 and 82) all indicate that he was misinformed as far as what had been ruled on and what needed to be ruled on in appellant's motion. The record will indicate that he abandoned the main issues, which involved substantive constitutional rights in appellant's original 27.26 petition and in doing so he was most effective at a critical stage in the appellant's cause.

" 'Failure of assigned counsel to advocate possibly meritorious post-conviction claim constitutes inadequate representation.' People v. Wilson [39 Ill.2d 275], 235 N.E.2d 561 (Supreme Court of Illinois).

"In that case the Supreme Court of Illinois reversed the dismissal of Defendant's motion for post-conviction relief, holding that the Public Defender had inadequately represented him on the motion. The facts of that case show the defendant moved to vacate a 1963 armed robbery judgment which had been entered after his guilty plea. In his moving petition he asserted various constitutional grounds for relief.

"The Supreme Court had held that one of his averments raised a serious constitutional issue. Yet, at the hearing on the motion to dismiss—which basically assumes the truth of the allegation—the petition was disposed of without any reference to the record or any fact relevant to the claim. Moreover, the assistant Public Defender assigned to represent defendant remained silent, never even mentioning the allegations of the petition while the motion to dismiss was granted.

"Without passing on the merits of any of defendant's claims, the Supreme Court reversed and remanded for further proceedings 'because the defendant did not receive the assistance of counsel.'

"So it is in the case. Appellant's counsel failed to research the records, as the entire petition is based on the illegal arrest, seizure and search, and when counsel stated on page 82 of (MT 2) that he thought the illegal seizure and arrest had been adjudicated, then he was waiving away the substantive rights of this appellant, and the Habeas Corpus should be granted."

On November 1, 1973, this Court entered an order granting petitioner leave to proceed in *forma pauperis* and directing respondent to show cause why the petition herein for a writ of habeas corpus should not be granted.

On November 15, 1973, counsel for respondent filed herein his response to the order to show cause, therein stating

that petitioner had exhausted his currently available and adequate state court remedies with respect to most of the contentions raised herein. As part of the response, counsel for respondent attached and submitted photocopies of the following documents: (1) the transcript of the evidentiary hearing and the entire record on appeal to the Missouri Supreme Court with respect to petitioner's motion under Rule 27.26, which was filed in the Circuit Court of Cooper County, Missouri, on August 21, 1967; (2) the opinion of the Missouri Supreme Court affirming on appeal the Circuit Court's denial of petitioner's August 21, 1967, motion under Rule 27.26, as reported at 446 S.W.2d 782 (Mo.Sup. 1969); (3) the transcript of the evidentiary hearing and the full record on appeal to the Missouri Supreme Court, with respect to petitioner's motion under Rule 27.26, which was filed in the Circuit Court of Cooper County on January 12, 1971; (4) the opinion of the Missouri Supreme Court affirming on appeal the Circuit Court's denial of petitioner's January 12, 1971, motion under Rule 27.26, as reported at 494 S.W.2d 30 (Mo.Sup.1973); (5) petitioner's application for a writ of habeas corpus, filed in the Missouri Supreme Court on September 13, 1962; and (6) a letter dated August 17, 1964, mailed by the petitioner to the Missouri Supreme Court, which was treated as a petition for a writ of habeas corpus and filed accordingly on August 25, 1964.

On November 28, 1973, petitioner filed herein his *pro se* traverse to the respondent's response to the order to show cause. In his traverse, the petitioner generally refutes the respondent's contentions with respect to the exhaustion issue, and he briefly contends that all of his allegations in support of the petition herein are "valid."

Under the provisions of Section 2254, Title 28, United States Code, a state prisoner, in the absence of exceptional circumstances not shown to be present in the case at bar, must fully exhaust his currently available and adequate state court remedies before invoking federal habeas corpus jurisdiction. Picard v. Connor, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1970); Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Under subsection (c) of Section 2254, Title 28, United States Code, a state prisoner's state court remedies are ordinarily not considered exhausted so long as he may present his contentions to the state courts by "any available procedure."

A careful review of the record presented to this Court reveals that two of the three specific contentions raised by the petitioner in ground A have never been presented to the Missouri courts. Those two unexhausted contentions are: (1) that the Superintendent of the Training School for Boys in Boonville, Missouri, did not have the authority to turn him over to the police without direction from the Missouri State Board of Training Schools; and (2) that he was denied his right to counsel at the time he was brought to the Superintendent's office for questioning, at which time he was arrested.

■ Under the circumstances presented in the case at bar, petitioner has a currently available and adequate state court remedy within the meaning of Section 2254, by means of a motion to vacate his sentence under Missouri Criminal Rule 27.26 in the Circuit Court of Cooper County, Missouri. Bosler v. Swenson, 423 F.2d 257 (8th Cir. 1970); Baines v. Swenson, 384 F.2d 621 (8th Cir. 1967); Collins v. Swenson, 384 F.2d 623 (8th Cir. 1967); Hooper v. Nash, 323 F.2d 995 (8th Cir. 1963), cert. denied, 376 U.S. 945, 84 S.Ct. 802, 11 L.Ed. 2d 768 (1964); Testerman v. Swenson, 331 F.Supp. 1195 (W.D.Mo.1971); White v. Swenson, 261 F.Supp. 42 (W.D. Mo.1966); Russell v. Swenson, 251 F. Supp. 196 (W.D.Mo.1966).

Petitioner should therefore file a motion to vacate his sentence under Missouri Criminal Rule 27.26 in the Circuit Court of Cooper County, raising two of

the three contentions stated as ground A and all evidentiary contentions in respect thereto, and all other grounds known to him for invalidating his state sentence. Dixon v. Missouri, 295 F. Supp. 170 (W.D.Mo.1966); Richardson v. Swenson, 293 F.Supp. 275 (W.D. Mo.1969); Cobb v. Wyrick, 379 F.Supp. 1287 (W.D.Mo.1974). From any adverse decision of the state trial court on that motion, petitioner should also appeal to the Missouri Supreme Court. In the absence of exceptional circumstances, not stated to be present in the case at bar, only when the Missouri Supreme Court, applying current federal standards and having before it an adequate evidentiary record, has ruled adversely to petitioner on the merits of those contentions can his state remedies be deemed exhausted for purposes of federal habeas corpus jurisdiction. 28 U.S.C. § 2254; Picard v. Connor, *supra;* Fay v. Noia, *supra;* White v. Swenson, *supra;* Cobb v. Wyrick, *supra;* Meller v. Swenson, *infra;* Bosler v. Swenson, *supra;* Russell v. Swenson, *supra.*

Therefore, the petition herein for a writ of habeas corpus should be dismissed without prejudice with respect to petitioner's unexhausted contentions.

A review of the record reveals that in respect to petitioner's remaining contentions his currently available and adequate state remedies have been exhausted in the Missouri courts. To save time and unproductive effort and in the discretion of this Court, petitioner's remaining unrelated and related exhausted claims will now be reviewed and considered on the merits. Cobb v. Wyrick, *supra; see also,* Tyler v. Swenson, 483 F.2d 611, 614 (8th Cir. 1973); Irby v. Missouri, 502 F.2d 1096, at page 1099 (8th Cir. 1974).

From a review of the files and records in the case at bar, including the transcripts on appeal to the Missouri Supreme Court, it is concluded that the petitioner was afforded full and fair evidentiary hearings resulting in reliable findings of fact under applicable federal procedural and substantive standards. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Brodkowicz v. Swenson, 357 F.Supp. 178, 185 (W.D. Mo.1973); Noble v. Swenson, 285 F. Supp. 385 (W.D.Mo.1968). Under these circumstances, this Court may rely on the state records, or in the alternative, independently find the facts from all the evidence in the habeas corpus record if the record is adequate for this purpose, without holding an evidentiary hearing. Townsend v. Sain, *supra;* Brown v. Swenson, 487 F.2d 1236, 1240 (8th Cir. 1973); In re Parker, 423 F.2d 1021 (8th Cir. 1970); Meller v. Swenson, 309 F. Supp. 519 (W.D.Mo.1969), affirmed, 431 F.2d 120 (8th Cir. 1970), cert. denied, 400 U.S. 996, 91 S.Ct. 469, 27 L.Ed.2d 445 (1971); Mountjoy v. Swenson, 306 F.Supp. 379 (W.D.Mo.1969); Brodkowicz v. Swenson, *supra;* Redus v. Swenson, 468 F.2d 606 (8th Cir. 1972).

In ground A, petitioner makes three separate contentions. Two of those have never been presented to the state courts and therefore will not be considered herein. In the third contention, petitioner asserts that he should have been treated as a juvenile under Chapter 211 of the Revised Statutes of Missouri, because at the time of the offense involved in this case he was under the custody of the Missouri State Board of Training Schools.

This contention was raised by the petitioner in his most recent 27.26 motion, and on appeal from a denial thereof, the Missouri Supreme Court treated this contention as follows:

"Re: Movant's claim that he was not afforded his rights under Chapter 211, RSMo (Juvenile Code). It is movant's contention that because he was committed to the training school for boys by the Juvenile Court of the City of St. Louis and was an inmate thereof on July 12, 1959, the date of the offense, that he was still subject to the exclusive jurisdiction of the juvenile court and was entitled to the procedures provided for in the Juvenile

Code. Movant was born January 18, 1942, and attained the age of seventeen on January 18, 1959. He was about 17½ years old at the time of the offense on July 12, 1959. The circuit court held that movant was not subject to the jurisdiction of the juvenile court nor entitled to the procedures of the Juvenile Code because, at the time of the alleged offense, he was not a child as that term is defined in § 211.021, whereby 'child' is defined as being a person under seventeen years of age. The court also held that movant was not under the continuing jurisdiction of the St. Louis Juvenile Court because of that portion of § 211.041, which provides, 'except in cases where he is committed to and received by the state board of training schools, unless jurisdiction has been returned to the committing court by provisions of section 219.220, RSMo, through requests of the court to the board of training schools.' Movant had not been returned to the Juvenile Court of the City of St. Louis.

"Movant argues that Chapter 219, RSMo, 'State Training Schools', controls his situation because he was a juvenile when received by the State Board of Training Schools. Chapter 219 is not controlling when the question is whether or not a person is subject to the exclusive jurisdiction of a juvenile court pursuant to the Juvenile Code. Movant was not under the age of seventeen as of the date of the alleged offense and was therefore not subject to Juvenile Code procedures. The trial court was correct in its ruling. The point is overruled." Russell v. Missouri, 494 S.W.2d 30, 35 (Mo. Sup.1973).

■ Because the above contention raises only the issue of compliance with state statutes and rules, it need not be determined by this Court. Caffey v. Wyrick, 377 F.Supp. 160 (W.D.Mo.1974).

The power of this Court in habeas corpus proceedings is limited to violations of federal constitutional and statutory standards and questions of state law are not cognizable.[3] Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); accord, Frazier v. Roberts, 441 F.2d 1224, 1228 (8th Cir. 1971); Robinson v. Wolff, 468 F.2d 438, 440 (8th Cir. 1972); Morton v. Haynes, 332 F.Supp. 890, 892 (E.D.Mo.1971); Caffey v. Wyrick, supra. Nevertheless, even considering that contention, based on state law it is concluded that it is without merit. The petitioner was not under the age of seventeen at the time he committed the offense in question, and therefore he did not come within the provisions of the Juvenile Code, Chapter 211, RSMo 1969, V.A.M.S. Moreover, the mere fact that petitioner was under the custody of the Missouri State Board of Training Schools, whose purpose is to rehabilitate and educate juveniles under Chapter 219, does not bring the petitioner within Chapter 211. As noted by the Missouri Supreme Court, ". . . Chapter 219 is not controlling when the question is whether or not a person is subject to the exclusive jurisdiction of a juvenile court pursuant to the Juvenile Code." Russell v. Missouri, 494 S.W.2d 30, 35 (Mo. Sup.1973).

In ground B, petitioner contends that the trial court did not comply with Missouri Supreme Court Rule 25.04 in taking petitioner's guilty plea, and therefore his plea was not voluntarily and understandingly made. Specifically, petitioner contends that the records of the entering of the plea of guilty shows that he was not advised of: (1) the nature of the charge; (2) the consequences of a plea of guilty; (3) the waiver of certain rights, privileges and immunities as a result of a plea of guilty; and (4) the fact that the court was not bound by the recommendation of the prosecutor or petitioner's attorney. Petitioner additionally asserts that the court failed to inquire whether

---

3. Except in claims of denial of equal protection of the laws, which is not material in this action.

the plea was freely made without threats, inducement, or promises.

■ Since petitioner's plea was entered in 1959, subsequent procedural requirements concerning inquiries into specific issues do not apply in this case. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); Brown v. Swenson, 487 F.2d 1236 (8th Cir. 1973). The rule of McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), which requires literal compliance with Rule 11 of the Federal Rules of Criminal Procedure, is not applicable in the case at bar by reason of its nonretroactivity. Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), reh. denied, 395 U.S. 971 89 S.Ct. 2106, 23 L.Ed.2d 761 (1969). "The determinative question in the present case is whether under the totality of the circumstances the petitioner's plea was entered knowingly and voluntarily." Brown v. Swenson, 487 F. 2d 1236, 1240 (8th Cir. 1973); Meller v. Swenson, 309 F.Supp. 519 (W.D.Mo. 1969), affirmed, 431 F.2d 120 (8th Cir. 1970), cert. denied, 400 U.S. 996, 91 S.Ct. 469, 27 L.Ed.2d 445 (1971).

The records shows that the information charging petitioner with the offense of forcible rape was read to the petitioner. Apparently anticipating that petitioner might claim he did not understand the legal terminology employed in the information, the facts of the crime were detailed by the prosecuting attorney, during which the terms "sexual intercourse" and "rape" were noted. Petitioner admitted that he committed the act as set forth in his statement. Two of petitioner's three attorneys made statements that they had advised the petitioner as fully as they could, including his right to trial by jury and the possible consequences thereof.

Furthermore, the evidence adduced at the various postconviction evidentiary hearings sheds additional light on the question of whether petitioner entered a knowledgeable and voluntary plea of guilty. The postconviction hearings under Rule 27.26 held in the case at bar satisfied the requirements of Jackson v. Denno, 378 U.S. 368, 391, 84 S.Ct. 1774, 1788, 12 L.Ed.2d 908, 924 (1964). *See also*, Mountjoy v. Swenson, 306 F.Supp. 379, 382 (W.D.Mo.1969).

The record of the evidentiary hearing following petitioner's first 27.26 motion indicates that the petitioner testified that there were no physical threats made to him when he signed the confession; that no one suggested that he would receive a lesser sentence if he confessed; and that the prosecuting attorney advised him before making the statement that he had the right to have an attorney present and that he did not have to make such statements. The attorneys who represented the petitioner at the guilty plea proceedings stated that they had fully advised the petitioner of the possibility of a change of venue; that he had a right to a jury trial; that they could not guarantee what his sentence would be if he plead guilty; and that the maximum sentence would be the death penalty, which could be assessed on a guilty plea as well as a guilty verdict by a jury. Petitioner's attorneys further testified at the hearing that they felt the petitioner fully understood what they explained to him, and that he had accepted their legal advice. Moreover, each attorney noted that he had explicitly reserved the choice of plea to the petitioner.

■■ Based on the record presented to this Court, it is concluded that the evidence reliably proves that the petitioner's plea of guilty was voluntary and intelligently made with the advice of counsel, and resulted from the knowledge of the strength of the state's case against the petitioner. Brown v. Swenson, 487 F.2d 1236, 1241 (8th Cir. 1973); Sappington v. United States, 468 F.2d 1378 (8th Cir. 1972), cert. denied, 411 U.S. 970, 93 S. Ct. 2164, 36 L.Ed.2d 693 (1973); Kotz v. United States, 353 F.2d 312 (8th Cir. 1965). The inquiry by the trial court more than complied with the minimum federal standards then in effect, whereby

the court was obliged only to satisfy itself by "appropriate" questioning that the plea was freely and voluntarily made. Smith v. United States, 339 F.2d 519 (8th Cir. 1964); Turner v. United States, 325 F.2d 988 (8th Cir. 1964); Bone v. United States, 351 F.2d 11 (8th Cir. 1965); Williams v. Missouri, Civil Action No. 19562–3 (W.D.Mo. May 31, 1974). The findings of fact made on these issues by the Circuit Court of Cooper County and the Missouri Supreme Court are reliable and are supported by the evidence. Brown v. Swenson, *supra*; Taylor v. Swenson, 458 F.2d 593 (8th Cir. 1972). Therefore, petitioner is not entitled to habeas corpus relief with respect to ground B.

In ground C, petitioner contends that the trial court erred in not directing *sua sponte* that he be given a mental examination to determine if he was competent to proceed. In support thereof, petitioner cites Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) and Brizendine v. Swenson, 302 F.Supp. 1011 (W.D.Mo.1969). Those cases require that the trial court hold a hearing whenever the evidence raises a *bona fide* doubt as to the accused's competency to stand trial. A mental examination is not expressly required. Neither a hearing nor an examination is required unless the evidence before the court reveals a *bona fide* doubt as to the accused's competency.

In his petition herein, the petitioner asserts that the trial court should have found and recognized such a *bona fide* doubt in light of petitioner's psychological record, the fact that he had confessed to the crime, and the fact that forcible rape was a capital offense. The latter two reasons provide no objective test with respect to the issue of competency and need not be discussed herein. With respect to petitioner's psychological record, it need be noted that the record itself establishes that ". . . there were no indications of any mental disorder and it is felt that he is entirely aware of the consequences of his behavior."

Petitioner further states that it was the practice of the clinical psychologist at the Missouri State Training School for Boys to administer a psychiatric examination to all incoming boys who were charged with the commission of a serious offense, including sexual offenses. Petitioner contends that anyone who commits such a sexual offense is in need of a psychiatric examination.

The practice of the clinical psychologist at the Missouri State Training School for Boys was insufficient to establish *bona fide* doubt. This is particularly true in light of the psychologist's report, wherein it is clearly stated that the petitioner was without any mental disorder. The petitioner himself was unable to testify as to any knowledge of mental disorders or to a history which encompassed any psychiatric or mental treatment.

The trial court found that petitioner had failed to establish mental incapacity at the time of his plea. On appeal, the Missouri Supreme Court affirmed this finding, concluding that ". . . there was nothing that would have raised even a bona fide doubt or have reasonably indicated to either movant's attorneys or to the sentencing court that movant was suffering from a mental disability whereby he could not cooperate in his own defense or that he did not understand the proceedings." Russell v. Missouri, 494 S.W.2d 30, 36–37 (Mo.Sup.1973). The findings of the trial court and Missouri Supreme Court on the issue of mental competency are supported by the evidence and are not clearly erroneous. Taylor v. Swenson, 458 F.2d 593 (8th Cir. 1972); Tyler v. Swenson, 427 F.2d 412 (8th Cir. 1970); Brown v. Swenson, 487 F.2d 1236, 1241 (8th Cir. 1973). Petitioner's contentions in support of ground C are without merit.

In ground D, petitioner asserts that he was subjected to ineffective assistance of counsel because his appointed attorneys did not request the court to direct

that he be given a psychiatric examination.

It is well established that in order to show a basis for relief on the ground of ineffective assistance of counsel, the petitioner must show actions of his attorney ". . . which would constitute such conscious conduct as to render pretextual the attorney's legal obligation to fairly represent the appellant and circumstances which demonstrate that which amounts to a lawyer's deliberate abdication of his ethical duty to his client." Brown v. Swenson, 487 F.2d 1236, 1240 (8th Cir. 1973); Robinson v. United States, 448 F.2d 1255 (8th Cir. 1971); Scalf v. Bennett, 408 F.2d 325, 327–328 (8th Cir. 1969). Hindsight can always be utilized by those not in the fray so as to cast doubt on trial tactics a lawyer had used. Trial counsel strategy will necessarily vary even among the most skilled attorneys. When that judgment exercised turns out to be incorrect or even poorly advised, this fact alone cannot support a belated claim of ineffective assistance of counsel. Mitchell v. Stephens, 353 F.2d 129, 145 (8th Cir. 1965), cert. denied, 384 U.S. 1019, 86 S.Ct. 1966, 16 L.Ed.2d 1042 (1966); Taylor v. United States, 332 F.2d 918, 922 (8th Cir. 1964); Kilgore v. United States, 323 F.2d 369, 372–373 (8th Cir. 1963), cert. denied, 376 U.S. 922, 84 S. Ct. 681, 11 L.Ed.2d 617 (1964); Stancliff v. Swenson, Civil Action No. 73CV–48–W–3 (W.D.Mo. April 30, 1974).

Petitioner relies on the practice of the clinical psychologist at the Missouri State Training School for Boys of administering psychiatric examinations in support of his contention that he was rendered ineffective assistance of counsel by failure of his attorneys to request a psychiatric examination. As noted above, such reliance is misplaced. This claim of ineffective assistance of counsel is without substantial merit. Brown v. Swenson, *supra*; *see also*, Robinson v.

United States, *supra*; Stancliff v. Swenson, *supra*; Redus v. Swenson, 468 F.2d 606 (8th Cir. 1972).

Petitioner additionally contends that he was the subject of ineffective assistance of counsel on the ground that one of his appointed attorneys, Hampton Tisdale,[4] Esquire, was at that time serving on a local civic committee advocating the placement of a fence around the State Training School for Boys. At the evidentiary hearing held during petitioner's last 27.26 motion, Mr. Tisdale testified that he had been active in attempting to have a fence placed around the Training School, but that his participation in such a project did not interfere or concern his defense of the petitioner. Mr. Tisdale further testified that he represented several other individuals from the Training School. Petitioner was allowed to cross-examine the witness, and again Mr. Tisdale stated that his participation on the committee did not affect his defense of the petitioner.

There is no indication in the record, nor has petitioner established, that Mr. Tisdale's defense of the petitioner was in any way hampered or affected by Mr. Tisdale's civic activities with respect to the Training School. Moreover, the record establishes that Mr. Tisdale was but one of three attorneys appointed to represent the petitioner. They all participated in the responsibility for the case, and they concurred in the actions taken. Under these circumstances, this Court is unable to find or conceive of any prejudice resulting to the petitioner because of Mr. Tisdale's participation in the civic committee. *See*, Jones v. Baker, 406 F.2d 739 (10th Cir. 1969); United States ex rel. Hussey v. La Vallee, 428 F.2d 457 (2d Cir. 1970). cert. denied, 400 U.S. 995, 91 S.Ct. 469, 27 L.Ed.2d 444 (1971).

Petitioner finally contends in ground E, that (1) he was deprived of his constitutional rights at his most re-

---

4. Mr. Tisdale is one of Missouri's ablest trial lawyers, whose performance in this case is shown by the record to be in keeping with the highest and best traditions of the bar.

cent 27.26 evidentiary hearing, and (2) that he was denied effective assistance of counsel at that hearing. Specifically, petitioner contends that his constitutional rights were violated because he was unnecessarily shackled during the hearing. Petitioner asserts that this helped bring about the waiver of certain claims set forth in his 27.26 motion.[5] This contention constitutes an unsupported conclusory allegation and, construed in the light most favorable to petitioner under the rule of Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), it must be concluded that petitioner states no claim for relief. Furthermore, the record indicates that this contention was waived by the petitioner in court on the advice of counsel and upon the inquiry of the petitioner himself by the trial court.

■ In the second portion of ground E, petitioner contends that his attorney did not afford him effective assistance of counsel with respect to his most recent 27.26 motion. In particular, petitioner asserts that his attorney did not familiarize himself with petitioner's 27.26 motion and, therefore, advised him to waive certain contentions. This contention is further without any merit and totally without support in the record. Brown v. Swenson, *supra*; Robinson v. United States, *supra*; Stancliff v. Swenson, *supra*.

Having carefully and thoroughly reviewed the record before this Court, it is concluded that the petition herein for a writ of habeas corpus should be dismissed with respect to those unexhausted contentions set forth as ground A(1) and A(2), and that the remainder of the grounds and contentions in support thereof should be denied.

For all the foregoing reasons, it is therefore

Ordered and adjudged that the petition herein for a writ of habeas corpus, with respect to those unexhausted contentions set forth as ground A(1) and A

(2), be and it is hereby, dismissed without prejudice. It is further

Ordered and adjudged that the petition herein for a writ of habeas corpus, with respect to all remaining grounds and contentions in support thereof, be, and it is hereby, denied.

---

5. This hearing was before the Circuit Court without a jury as provided by law.